**Delores ROSS, a Minor, by her Mother and Next Friend, Mary Alice Benjamin, et al., Plaintiffs,**

**v.**

**Mrs. Frank DYER, as President of the Board of Trustees of the Houston Independent School District, et al., Defendants.**

**Civ. A. No. 10444.**

United States District Court
S. D. Texas,
Houston Division.

March 19, 1962.

Thurgood Marshall, New York City, U. Simpson Tate, Dallas, Tex., Henry Doyle, and Weldon H. Berry, Houston, Tex., for plaintiff Delores Ross, et al.

Thompson, Hippard & Gibson, James J. Hippard, Houston, Tex., for intervening plaintiff, Norman E. Smith, and others.

Bracewell, Reynolds & Patterson, Joe H. Reynolds, Houston, Tex., for defendants.

CONNALLY, District Judge.

On August 12, 1960, after full hearing and consideration, this Court entered an order in this proceeding directing that the defendant School District begin a program of desegregation with the September, 1960 school term, at which time the first grade would be desegregated, with an additional grade to be desegregated each year thereafter. On appeal to the Court of Appeals for this Circuit, Houston Independent School Dist. v. Ross, 5 Cir., 282 F.2d 95, this order was

upheld, and the program of desegregation was initiated. Since that date, and pursuant to such order, the first and second grades of the elementary schools have been desegregated. Evidence shows that the transition has been accomplished thus far in an orderly manner, with no disruption of the school curriculum, and with a minimum of friction and discontent. I suggest that this is a matter in which the City of Houston may well take pride.

Motions filed recently in this proceeding on behalf of certain plaintiffs charge that discrimination has been practiced, and that certain rules and practices heretofore followed by the School Board violate the order of August 12, 1960.

■ First, as to the minor plaintiff, Sheila Smith, it is contended that when she was denied admission to the Allen Elementary School it was because she was of the colored race. The facts in this respect are as follows. This child, with her parent, presented herself at the Allen Elementary School September 14, 1961 for enrollment in the first grade. Classes had begun on September 7, and registration prior thereto; though it was not unusual to admit scholastics thereafter for late registration. The minor plaintiff and her parent were advised that the three first grade classes previously had reached the maximum permitted by school policy (36 children per class), and that further applications could not be accepted. She was referred to the other school (with colored teachers and scholastics, though not restricted thereto) which served the area in which the plaintiff resided.

The evidence is undisputed that, in fact, the first grade classes at Allen Elementary School had been filled, and closed, following discussions between the principal and the appropriate administrative officers of the School System, about September 7 or 8. It also is undisputed that white children who applied thereafter also were denied admission for this reason. One or more of such instances occurred prior to September 14, and others following that date.

Counsel for the plaintiff makes much of the fact that, of the 145 elementary schools in the Houston School System, a few such schools had first grade registrations in excess of 36, for limited periods of time. These excessively large classes were relieved by readjustments, transfers, etc., from time to time. He argues that the principal at Allen should have admitted the minor plaintiff, under these circumstances.

I find no discrimination to have been practiced as to the minor plaintiff by virtue of her race. Additionally, I am of the view that this aspect of the matter is now moot. The September, 1961 semester has been concluded, and if the plaintiff makes timely application for enrollment, the question presented here will not arise again.

■ As to the other plaintiffs, attack is made upon two rules heretofore followed by the Board in its registration of scholastics. First is the rule to the effect that, barring unusual circumstances, all children of the same family eligible therefor are required to attend the same elementary school. The evidence shows without dispute that this rule or practice has been followed in the schools of this city for some 40 to 50 years; that a similar rule is applied in most cities of substantial size throughout the State, and in fact, the land. Obviously it was not promulgated to circumvent or evade compliance with Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, or with the earlier order of this Court.

While the plaintiffs concede that the rule has sound basis in theory and in practice in its normal application, they contend that, when applied to a colored family with an older child in the fourth or fifth (and presently segregated) grades, and a younger child in the first or second (and presently integrated) grades, thus requiring the younger child to attend the same school as the older sibling, it constitutes a discriminatory application thereof, and a violation of this Court's order. I am unable to agree.

While it is true that application of the rule will perhaps prevent certain colored scholastics from attending the school of their choice, it does not necessarily follow that the rule thereby becomes invalid. Under the same circumstances, the rule also prevents white children from attending the school of their choice.

During the course of the argument the Court expressed some uncertainty as to the validity of the rule when applied to a peculiar situation. Thereafter, and before the briefs were filed, the School Board voluntarily modified the rule to remove any question in this particular.

The so-called "Brother and Sister Rule" is reasonable; is based upon sound policies of school administration; and has been found to have merit, as evidenced by its widespread application. There is no evidence whatsoever that it has been applied in a discriminatory manner, in the sense that the rule is enforced as to Negroes but waived as to whites. It is a valid administrative measure.

Plaintiffs also attack the rule which requires of a student desiring to transfer from one school within the District to another, that permission be secured from the principal of the old, as well as the new, school. This rule likewise is of long standing, and is supported by reason, logic and sound administrative practices. The evidence shows that in practice, the permission of the two principals concerned is granted routinely unless there be good cause therefor. The evidence fails to show that any denial of permission to Negro scholastics has been arbitrary or capricious, or that permission to transfer has been denied on account of race. In fact, the evidence shows that in those cases where transfer requests were denied, in each instance it was due to the fact that the new school did not serve the area in which the applicant resided (Morrow case), or where the enrollment of other children in the family at the old school prevented transfer of the applicant to the new (Reader case, Vaughan case, Johnson case, etc.). Despite the enforcement of these rules, in the school year 1960–61 of 19 colored children who sought admittance to formerly all white schools, 12 were accepted. In 1961–62, of 50 applicants, 33 were accepted. This is hardly indicative of any concerted scheme systematically to exclude the Negro applicant.

In the motions now before the Court the colored plaintiffs do not seek the same treatment as is afforded white students, to which they are entitled; in fact, they seek a different, and superior, treatment, by reason of their race. The law does not grant them this.

The motions to hold the defendants in contempt for enforcing the rules hereinabove mentioned, as constituting a violation of the prior orders of this Court, are denied.